UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


SHAW VALE COLEMAN,

           Plaintiff,

v.                                    Case No. 3:19-cv-318-J-39PDB

MARK S. INCH, et al.,

           Defendants.

_____

## ORDER OF DISMISSAL WITHOUT PREJUDICE

### I. Procedural Status

Plaintiff, Shaw Vale Coleman, an inmate of the Florida Department of Corrections (FDOC), initiated this action on March 14, 2019, by mailing for filing a pro se civil rights complaint (Doc. 1). Thereafter, Plaintiff filed an amended complaint (Doc. 4). Finding the amended complaint deficient, the Court directed Plaintiff to submit a second amended complaint. See Order (Doc. 7). The Court noted why Plaintiff's amended complaint was deficient and advised him of the federal pleading standards. Id. The Court warned Plaintiff his failure to comply with the order may result in the dismissal of this action. Id.

Plaintiff has filed a second amended complaint (Doc. 11; SAC), which is before the Court for screening under the Prison Litigation Reform Act (PLRA). The PLRA requires a district court to dismiss

a complaint if the court determines the action is frivolous, malicious, or fails to state a claim on which relief may be granted. See 28 U.S.C. § 1915(e)(2)(B). With respect to whether a complaint "fails to state a claim on which relief may be granted," the language of the PLRA mirrors the language of Rule 12(b)(6), Federal Rules of Civil Procedure, so courts apply the same standard in both contexts. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); see also Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not suffice. Id. (quotations, alteration, and citation omitted).

Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted). In reviewing a pro se plaintiff's pleadings, a court must liberally construe the plaintiff's allegations. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011).

However, the duty of a court to construe pro se pleadings liberally does not require the court to serve as an attorney for the plaintiff. <u>Freeman v. Sec'y, Dept. of Corr.</u>, 679 F. App'x 982, 982 (11th Cir. 2017) (citing <u>GJR Invs., Inc. v. Cty. of Escambia</u>, 132 F.3d 1359, 1369 (11th Cir. 1998)).

## II. Plaintiff's Allegations & Claims

In his second amended complaint, Plaintiff names twenty-eight Defendants,[1] asserts fifty-five paragraphs of factual allegations, which are exceedingly confusing, and states nine causes of action, all of which include essentially the same conclusory language devoid of connection to factual allegations. <u>See</u> SAC at 2-4, 15-21.

As Defendants, Plaintiff names former Governor Rick Scott; former Inspector General Jeffrey T. Beasley; an "investigative manager," Heather Robinson, who appears to have worked for Governor Scott; the former and current Secretary of the FDOC, Julie Jones and Mark Inch, along with three individuals identified as "secretary representative[s]"; deputy inspector Donaldson; former Warden of Florida State Prison (FSP) John Palmer; Assistant Wardens of FSP, J.S. Edwards and Jeffrey R. McClellan; and sixteen FSP corrections officers of different rank. <u>Id.</u> at 2-4.

---

[1] While he names twenty-eight Defendants in section I (Parties), Plaintiff asserts claims against twenty-nine individuals. <u>See</u> SAC at 2-4, 18.

Plaintiff alleges he was "victimized by the officers and other staff members" at FSP in 2014 and 2015, and he sought protection from former Governor Rick Scott, whose office referred his complaint (a letter) to the Inspector General's office.[2] Id. at 5-6. Plaintiff claims the Governor's and Inspector General's offices failed to investigate "whether [he] had received his Constitutional Rights [and] . . . failed to protect [him] from being treated in an inhumane matter [sic], by allowing the officers to continue their 'customs and policies'" of falsifying disciplinary reports and placing inmates on strip status. Id. at 6-7.

Plaintiff identifies one corrections officer, Defendant Olson, whom he says "victimized" him by "buck[ing] [him] on dayroom privileges," yelling at him, and falsifying disciplinary reports against him. Id. at 7-8. Plaintiff asserts Defendant Olson falsified disciplinary reports in retaliation for Plaintiff "stabbing [Olson's] friends that were on the cell extraction team and for exercising [his] rights to write grievances and to file lawsuits." Id. at 8. Plaintiff alleges he declared psychological emergencies and asked to be placed in protective custody because of Defendant Olson, but his requests were not honored, and he "was

---

[2] Plaintiff is now housed at Taylor Correctional Institution. See Notice of Address Change (Doc. 9).

left to be continually victimized and abused." Id. at 9-10, 11,
12.

Sometime in August 2015, after Defendant Olson wrote three
disciplinary reports against Plaintiff, three officers, Defendants
Andrews, Olson, and Risner, placed Plaintiff on property
restriction/strip status for seven days. Id. at 12-13. Plaintiff
alleges he had no clothing other than boxers and no bedding, though
he was permitted to have his legal work. Id. at 13.

Counts one through eight[3] are against different groups of
Defendants. In all counts, Plaintiff alleges Defendants violated
his rights under the First, Eighth, and Fourteenth Amendments, and
state constitutional and statutory provisions. Id. at 15-21. And
in each count, Plaintiff repeats the following vague, conclusory
language: "while acting under the Color of State Law, [Defendants]
did act with deliberate indifference, or within the scope of their
employment, or in bad faith, or with malicious purpose, or in a
manner exhibiting wanton and willful disregard of the Plaintiff's
Human Rights and Safety." Id.

The only variation in language in each count is the manner in
which, according to Plaintiff, the different groups of Defendants
allegedly acted with deliberate indifference or in disregard of

---

[3] Plaintiff sets forth nine causes of action, but the last
one is a request for declaratory relief, not a separate claim
against any of the named Defendants. See SAC at 22.

his rights. Plaintiff's assertions in this regard are similarly vague and conclusory. He alleges Defendants failed to act "in the face of well documented widespread abuse" (count one); failed to "adhere to administrative rules and regulations" and/or failed to investigate alleged constitutional violations (counts two, four, five, and six); "repeatedly and systematically allowed . . . subordinates to place inmates on [s]trip and file false and unjustified disciplinary reports" (count three); and filed or approved "false and unjustified disciplinary reports or authorized [Plaintiff] to be placed on [s]trip [s]tatus[4] (counts seven and eight). Id.

Plaintiff alleges emotional injuries, numbness in his legs and feet, and severe back pain. Id. at 22. As relief, he seeks compensatory and punitive damages and to have "the disciplinary reports in question overturned and expunged." Id.

### III. Analysis & Conclusions

Plaintiff's second amended complaint is subject to dismissal under this Court's screening obligation because he fails to "state a claim to relief that is plausible on its face." See Iqbal, 556 U.S. at 678. To state a claim under 42 U.S.C. § 1983, a plaintiff

---

[4] Counts seven and eight are essentially the same, but in count eight, Plaintiff alleges two of the six Defendants named in count seven acted in retaliation for Plaintiff "exercising his [First] Amendment Rights to file grievances against [Defendant] Olson." See SAC at 21.

must allege "(1) both that the defendant deprived [him] of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law." See <u>Bingham</u>, 654 F.3d at 1175 (alteration in original).

With minor changes, Plaintiff's second amended complaint is the same as his first. And like his first amended complaint, Plaintiff's second amended complaint is deficient under federal pleading standards. Plaintiff alleges Defendants violated the First, Eighth, and Fourteenth Amendments, and state constitutional and statutory provisions. However, Plaintiff does not connect his factual allegations to his separate causes of action, he identifies federal and state constitutional or statutory provisions as labels or conclusions without explaining how each Defendant violated his rights under those laws, and he does not explain how each Defendant caused the injuries he allegedly sustained.

Despite the pleading deficiencies, the Court will analyze whether Plaintiff's allegations permit the reasonable inference Defendants violated the federal constitutional provisions Plaintiff identifies (the First, Eighth, and Fourteenth Amendments) to invoke this Court's jurisdiction under § 1983.

## A. First Amendment

While Plaintiff repeats in each count a violation of the First Amendment, it appears he asserts a retaliation claim against only

two Defendants: Olson and Reeder, corrections officers at FSP. To
state an actionable claim for retaliation, a plaintiff must allege:

> (1) his speech was constitutionally protected;
> (2) the inmate suffered adverse action such
> that the [official's] allegedly retaliatory
> conduct would likely deter a person of
> ordinary firmness from engaging in such
> speech; and (3) there is a causal relationship
> between the retaliatory action [the
> disciplinary punishment] and the protected
> speech [the grievance].

O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011)
(alterations in original). The third element, causation, requires
proof that "a prison official's actions were 'the result of [the
inmate's] having filed a grievance.'" Id. (emphasis and alteration
in original).

Plaintiff asserts Defendants Olson and Reeder retaliated
against him because he filed grievances against Olson.[5] See SAC at
21. But Plaintiff includes no factual allegations showing a causal
connection between any retaliatory action and his protected
speech. For instance, Plaintiff does not describe the nature of
the grievances he wrote against Defendant Olson, nor does he
include allegations permitting the reasonable inference Defendants
Olson or Reeder filed disciplinary reports or took other punitive
measures against him because he wrote grievances.

---

[5] Plaintiff also contends Defendant Olson retaliated against
him for stabbing another officer. See SAC at 8. Even if true,
stabbing someone is not "protected speech" under the First
Amendment.

8

Plaintiff's allegations of retaliation are simply conclusory, amounting to "naked" assertions. <u>See</u> <u>Hall v. Smith</u>, 170 F. App'x 105, 107-08 (11th Cir. 2006) ("Vague and conclusory allegations will not support a claim under § 1983."). Naked assertions without factual support do not satisfy the minimal pleading standards under the Federal Rules of Civil Procedure. <u>See</u> <u>Tani v. Shelby Cty., Ala.</u>, 511 F. App'x 854, 857 (11th Cir. 2013) (citing <u>Iqbal</u>, 556 U.S. at 678) (affirming dismissal of a complaint that alleged, as labels and conclusions, violations of various constitutional rights with no supporting facts "explain[ing] what actions caused which violations"); <u>see also</u> <u>Lawson v. City of Miami Bch.</u>, 908 F. Supp. 2d 1285, 1291 (S.D. Fla. 2012) (dismissing a retaliation claim where the plaintiff alleged only "unsubstantiated legal conclusions" that officers arrested him in retaliation for exercising his First Amendment right to free speech).

Accordingly, Plaintiff fails to state a claim under the First Amendment.

### B. Eighth Amendment

Liberally construing Plaintiff's second amended complaint, he attempts to assert Eighth Amendment failure-to-protect and conditions-of-confinement claims. Plaintiff alleges Defendants failed to protect him from being "victimized," exposed him to cruel

and unusual prison conditions by placing him on strip status, and verbally abused or threatened him.[6] See SAC at 6-7, 10, 13, 15.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment, however, does not require prison officials to ensure "comfortable prisons." Thomas v. Bryant, 614 F.3d 1288, 1306-07 (11th Cir. 2010). To establish an Eighth Amendment violation, an inmate must show a prison official "actually (subjectively) knows that an inmate is facing a substantial risk of serious harm, yet disregards that known risk by failing to respond to it in an (objectively) reasonable manner." Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 617 (11th Cir. 2007) (citing Farmer, 511 U.S. at 837, 844). "The known risk of injury must be a 'strong likelihood, rather than a mere possibility.'" Brown v. Hughes, 894 F. 2d 1533, 1537 (11th Cir. 1990).

---

[6] As noted earlier, Plaintiff does not say what factual allegations support each cause of action. The best the Court can discern, Plaintiff alleges the following Defendants failed to protect him: Scott, Beasley, Robinson, Jones, Inch, Neel, Greene, Paynter, Donaldson, Palmer, Edwards, McClellan, Smith, and Gay; and the following Defendants improperly placed Plaintiff on or approved his placement on strip status: Epperly, Risner, Reeder, Olson, and Andrews. Plaintiff does not state a separate count for verbal abuse, but his allegations suggest he seeks to hold Defendant Olson responsible for abusive language, either in connection with his purported retaliation claim or as a separate claim.

An inmate's complaints of vague, generalized, and unsubstantiated fears do not put prison officials on notice that he faces a substantial risk of serious harm. See, e.g., Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (holding the plaintiff's report that he interpreted his cellmate's vague statement as a threat did not "provide a sufficient basis to make the inferential leap that a substantial risk of serious harm to [the plaintiff] existed"); McBride v. Rivers, 170 F. App'x 648, 655 (11th Cir. 2006) (finding the plaintiff's report to guards that he and his cellmate had problems and that the plaintiff was in fear for his life were too vague to permit the inference that the plaintiff faced a substantial risk of serious harm).

A claim that a prisoner was subjected to inhumane prison conditions requires a prisoner to allege a prison official was deliberately indifferent to conditions that were "sufficiently serious." Chandler v. Crosby, 379 F.3d 1278, 1288 (11th Cir. 2004) ("The 'cruel and unusual punishments' standard applies to the conditions of a prisoner's confinement."). Conditions of confinement are sufficiently serious under the Eighth Amendment only if they are so extreme that they expose the prisoner to "an unreasonable risk of serious damage to his future health or safety." Id. at 1289. Allegations of merely harsh conditions do not state a claim under the Eighth Amendment. Id. Similarly, allegations of verbal abuse, aggressive language, or threats, do

not state a claim under the Eighth Amendment. See Hernandez v. Fla. Dep't of Corr., 281 F. App'x 862, 866 (11th Cir. 2008).

A prisoner who alleges he was placed on strip status with only boxers, even if for longer than a few days, fails to state a claim under the Eighth Amendment. See Woodson v. Whitehead, 673 F. App'x 931, 932 (11th Cir. 2016) ("Confinement without clothing (other than boxers), bedding, or hygienic materials for 72 hours during the months of April and August in Florida is not the type of extreme prison condition[] that create[s] a substantial risk of serious harm."); O'Connor v. Kelley, 644 F. App'x 928, 932 (11th Cir. 2016) (holding the prisoner failed to state the conditions of his confinement were cruel and unusual when he was placed on strip status for weeks).

Plaintiff fails to allege conduct by Defendants that meets the stringent Eighth Amendment deliberate indifference standard. As to his failure-to-protect claim, Plaintiff does not allege he put any Defendant on notice that he faced a substantial risk of serious harm. Plaintiff alleges he sought protection from the Governor's office in July 2014, because he believed officers were retaliating against for having stabbed an officer. The alleged acts of retaliation were the filing of false disciplinary reports, assaults, and destruction of property. See SAC at 5. Plaintiff fails to allege he provided officials specific examples of the alleged retaliatory actions. Id. at 5-6.

12

Plaintiff also contends he sought protection from officials at FSP in March 2015 when he was before the disciplinary hearing committee. Id. at 9. Plaintiff asserts he "informed the (D.R.) committee that [his] life was in danger, and that [he] wanted to be placed in Protective Custody because Officer Gary Olson, threatened [him]." Id. at 10. Plaintiff claims the committee members did not report his allegations and he was not placed in protective management. Id. Plaintiff sent another "formal complaint" to the Governor's office in March 2015. Id. at 11. Plaintiff does not indicate the basis of his complaint, but he asserts the Governor's office responded stating his complaint would be investigated by the office of the Inspector General. Id. Plaintiff concedes he thereafter had a medical examination, though he complains the investigators, Defendants Donaldson and Smith, did not interview him.[7] Id.

Plaintiff's reports of fear to the Governor's office and to officials at FSP constitute vague, generalized, unsubstantiated claims of past harm. Plaintiff does not allege he reported specific facts permitting the inference he faced a substantial threat of serious harm in the future. See Rodriguez, 508 F.3d at 617 ("[T]he question under the Eighth Amendment is whether prison officials,

---

[7] Plaintiff alleges the medical examination was useless because he "had been assaulted years before." SAC at 11.

acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'"). <u>See also</u> <u>Carter</u>, 352 F.3d at 1349; <u>McBride</u>, 170 F. App'x at 655.[8] To the extent Plaintiff reported to officials that he feared future harm based on the past incidents involving Defendant Olson or others, his complaints were speculative.

Moreover, assuming Plaintiff reported Defendant Olson's alleged retaliatory conduct (verbal abuse and falsified disciplinary reports), this conduct cannot fairly can be characterized as abuse under Eighth Amendment standards. <u>See, e.g.</u>, <u>Hernandez</u>, 281 F. App'x at 866 ("[V]erbal abuse alone is insufficient to state a constitutional claim."); <u>Wagner v. Smith</u>, No. 5:06CV11 MCR/EMT, 2006 WL 2482782, at *3 (N.D. Fla. Aug. 25, 2006) ("[T]he filing of false disciplinary charges against an inmate does not alone amount to a constitutional violation."). Thus, to the extent Plaintiff suggests any Defendant failed to

---

[8] Plaintiff's suggestion that a failure to investigate his complaints amounts to an Eighth Amendment violation similarly fails. As alleged, Plaintiff did not report a specific or particularized threat of harm. <u>See</u> <u>Carter</u>, 352 F.3d at 1349. <u>See also</u> <u>Reynolds v. Henry</u>, 69 F.3d 548 (10th Cir. 1995) (Table) ("A conclusory allegation of a failure to investigate without other non-conclusory allegations relating to the defendant's state of mind and the defendant's knowledge of dangerous circumstances does not constitute a cognizable claim for violations of Eighth Amendment rights.").

protect him from Defendant Olson's "abuse," he does not state a plausible claim for relief under § 1983.

Plaintiff also fails to allege facts permitting the inference Defendants were deliberately indifferent to his reports of fear. Plaintiff says the Governor's office referred his 2014 complaint to the Inspector General's office, and his 2015 complaint resulted in an investigation. See SAC at 6, 11. That Plaintiff was unsatisfied with the response from the Governor's office or the investigation does not mean Defendants were deliberately indifferent to a substantial risk of serious harm.

Plaintiff's allegations also show the disciplinary hearing committee members were not deliberately indifferent to his request to be placed in protective management in March 2015. Plaintiff alleges he was adjudicated guilty of the disciplinary charges and sent to disciplinary confinement for sixty days. As Plaintiff was no longer housed under Defendant Olson's custody, there was no need to send him to protective management.[9]

In August 2015, Plaintiff appeared before the disciplinary hearing committee again. Id. at 13. Plaintiff provides copies of

---

[9] Plaintiff alleges that when he was released from disciplinary confinement in May 2015, he was "move[d] back to" Defendant Olson's dorm. SAC at 11. Plaintiff does not allege Defendant Olson physically harmed him after he was sent back to Olson's dorm. Id. The only alleged retaliatory conduct Defendant Olson directed toward Plaintiff after May 2015, was writing additional disciplinary reports.

his disciplinary reports, which show he voiced complaints about Defendant Olson, and his complaints were not ignored (Docs. 11-1, 11-2, 11-3, 11-4; Pl. Exs. A through D). For instance, on August 5, 2015, the disciplinary hearing report notes, "[Plaintiff] stated the DR is false and that he needed protection from the reporting officer [Gary Olson]. He was advised his allegations would be reported." See Pl. Ex. C at 3. On August 6, 2015, Plaintiff "repeated his written allegations that the reporting officer was harassing him and stated he needed protection." See Pl. Ex. D at 3. The hearing committee advised Plaintiff "his allegations would be reported." Id.

As to Plaintiff's contention that his placement on strip status was inhumane, the Eleventh Circuit has held the conditions of which Plaintiff complains are not cruel and unusual. See Woodson, 673 F. App'x at 932; O'Connor, 644 F. App'x at 932. Plaintiff does not allege facts permitting the inference he endured conditions "so extreme as to violate contemporary standards of decency." See Alfred v. Bryant, 378 F. App'x 977, 980 (11th Cir. 2010) (finding no Eighth Amendment violation where the plaintiff lived in a prison cell for eighteen days with no mattress and a malfunctioning toilet).

For the above reasons, Plaintiff fails to state a plausible Eighth Amendment claim against any of the named Defendants.

### C. Fourteenth Amendment

The remainder of Plaintiff's allegations, liberally construed, speak to alleged due process violations. Plaintiff asserts he was adjudicated guilty of disciplinary charges "without being given the procedural due process guaranteed by the Department Rules and Regulations"; and some Defendants failed to "correct . . . constitutional abuses" by denying grievances and appeals of his disciplinary charges, refusing to properly investigate his complaints of fear, and failing to follow protocol when he declared psychological emergencies.[10] See SAC at 10, 13, 14, 16, 18.

Plaintiff does not explain how he was denied due process or what rules and regulations Defendants allegedly violated. However, the copies of the disciplinary reports Plaintiff filed offer some insight. See Pl. Exs. A-D. Plaintiff disputes four disciplinary reports, two of which were overturned after he appealed the decisions for alleged due process violations (insufficient investigation, improper evidence, and failure to consider his evidence). See Pl. Ex. C at 4; Pl. Ex. D at 4.[11] Even though two

---

[10] In counts four, five, and six, Plaintiff alleges the following Defendants denied him due process or did not follow administrative rules related to his disciplinary charges: Donaldson, Palmer, Edwards, McClellan, Smith, Gay, Jackson, Perry, Woodcocok, Lemire, Hardin, Nichols, Anders, Coleman, Roberts, and Finch. See SAC at 18-19.

[11] The responding official informed Plaintiff his charges had been overturned in both instances because "the disciplinary report

charges were overturned, Plaintiff alleges he served an additional thirty-five days in disciplinary confinement. <u>See</u> SAC at 13-14; Pl. Ex. C at 4-5; Pl. Ex D at 4-5. Plaintiff was found guilty of the other two charges. Plaintiff provides no evidence he successfully appealed those charges, nor does he allege how he was denied due process at the respective disciplinary hearings. <u>See</u> Pl. Ex A at 3; Pl. Ex. B at 3.

The Supreme Court has held the imposition of disciplinary confinement does not trigger due process protections. <u>Sandin v. Conner</u>, 515 U.S. 472, 486 (1995) ("[D]iscipline in segregated confinement [does] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."). <u>See also</u> <u>Woodson</u>, 673 F. App'x at 933 ("The Due Process Clause does not create an enforceable liberty interest in freedom from restrictive confinement while a prisoner is incarcerated."). Thus, even if Plaintiff spent more time in disciplinary confinement than he should have, he does not allege a protected liberty interest to which due process protections attach.

Notably, Plaintiff does not allege the disciplinary charges affected the duration of his sentence. For instance, he does not allege a loss of good time credits, nor do the disciplinary reports

_____

was made on technical errors made in the processing of the same." <u>See</u> Pl. Ex. C at 4; Pl. Ex. D at 4.

reflect such a sanction was imposed. See Pl. Ex A at 3; Pl. Ex. B at 3; Pl. Ex. C at 3; Pl. Ex D at 3. And Plaintiff asserts no facts indicating he was subjected to conditions so severe that they imposed upon him a significant hardship in comparison to the ordinary incidents of prison life. See Sandin, 515 U.S. at 484. Thus, Plaintiff's allegations, accepted as true, fail to demonstrate a denial of due process under the Fourteenth Amendment, and his due process claims are due to be dismissed. See Smith v. Deemer, 641 F. App'x 865, 867, 868 (11th Cir. 2016) (holding the district court properly dismissed plaintiff's due process claim because the disciplinary hearing did not result in a loss of good time credits and plaintiff did not allege his term of disciplinary confinement exposed him to atypical and significant hardship even though the conditions in disciplinary confinement were more restrictive and less comfortable than those in general confinement).

With respect to those Defendants Plaintiff asserts did not correct alleged constitutional violations as grievance responders, he does not state a viable claim under § 1983. He alleges no underlying constitutional violation and, regardless, "[a]n inmate has no constitutionally-protected liberty interest in access to [the grievance] procedure." Bingham, 654 F.3d at 1178 (finding the district court did not "abuse[] its discretion in dismissing [the plaintiff's] claim that the prison's grievance procedures were

19

inadequate"); See also Charriez v. Sec'y, Fla. Dep't of Corr., 596 F. App'x 890, 895 (11th Cir. 2015) (holding the district court properly found the plaintiff failed to state a claim where he alleged the defendants did not "take corrective action" in response to his grievance appeal); Mathews v. Moss, 506 F. App'x 981, 984 (11th Cir. 2013) (holding the plaintiff failed to state a plausible claim because he merely "alleged that his prison grievances were either ignored or wrongly decided or that prison officials did not properly follow the prison's own grievance procedures").

### D. Supervisory Liability

Given Plaintiff's vague, conclusory, and confusing allegations and claims, his theory of liability as to some Defendants is not readily apparent. To the extent Plaintiff seeks to hold some Defendants liable simply because they are supervisors of those Plaintiff believes violated his rights, his claim fails because he does not allege an underlying constitutional violation. See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1308 (11th Cir. 2009) (holding the plaintiff's supervisory liability claim failed "because the underlying § 1983 claims fail[ed]") (citing Hicks v. Moore, 422 F.3d 1246, 1253 (11th Cir. 2009)). Moreover, an individual cannot be held liable under § 1983 based on that person's supervisory position alone. See Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citation omitted) ("It is well established in this Circuit that

supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.").

### IV. Conclusion

Under a liberal review of Plaintiff's second amended complaint and accepting Plaintiff's allegations as true, Plaintiff fails to allege the denial of a constitutional right. Thus, he does not state a claim for relief under § 1983. Because Plaintiff fails to state a plausible federal claim, the Court declines to determine whether any purported state-law claim may be viable. Plaintiff's second amended complaint will be dismissed in its entirety without prejudice subject to Plaintiff's right to pursue any viable, available claims in state court.

Accordingly, it is

**ORDERED:**

1. Plaintiff's second amended complaint (Doc. 11) is **DISMISSED without prejudice** under 28 U.S.C. § 1915(e)(2)(B).

2. The **Clerk** shall enter judgment dismissing the case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of

April, 2020.


_____
BRIAN J. DAVIS
United States District Judge


Jax-6
c:
Shaw V. Coleman